UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALLAS WOODY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>COINBASE GLOBAL, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-00190-JD<br><br>**ORDER RE ARBITRATION** |

In this putative class action, named plaintiffs Dallas Woody and Peter Hrehorovich allege that Coinbase reneged on a promise to deliver "airdrops" of new cryptocurrencies from the Flare blockchain network. Dkt. No. 5. An airdrop is an online transfer of a newly minted digital asset to owners of an existing digital asset. *See id*. ¶¶ 2, 74. Plaintiffs say that they were entitled to two airdrops, in 2021 and 2023, and that Coinbase's failure to timely deliver the new coins to their wallets cost them money. *See id*. ¶ 10. They allege common law and California statutory claims on behalf of a proposed nationwide class of Coinbase customers. *Id*. ¶ 11.

Coinbase asks to send plaintiffs' claims to arbitration on an individual basis, pursuant to the Federal Arbitration Act and an arbitration provision in Coinbase's User Agreement. Dkt. No. 26. Plaintiffs oppose. Dkt. No. 28. The case is ordered to arbitration.

## BACKGROUND

The facts salient to arbitration are straightforward. As alleged in the complaint, Coinbase is a centralized digital asset exchange. Dkt. No. 5 ¶ 43. Coinbase users must create an account and agree to Coinbase's User Agreement (UA) before engaging in transactions. *Id*. ¶ 48. The named plaintiffs were required to sign UAs before the first Flare airdrop. *Id*. ¶ 50.

The complaint mentions arbitration clauses in the UAs. *See*, *e.g.*, *id.* ¶¶ 52, 57. Coinbase provided copies of the UAs in effect in 2017 and as of 2022, when Coinbase amended the agreement. *See* Dkt. No. 26-1 (Black Decl.); Dkt. 26-4 & 26-5 (Exhs. C and D with 2017 UAs); Dkt. No. 26-6 (Exh. E with 2022 UA). The named plaintiffs opened Coinbase accounts in 2017 and accepted the UAs then in effect. Dkt. No. 5 ¶¶ 9-10. The 2017 UAs had binding arbitration clauses. Dkt. Nos. 26-4 at ECF p. 12 § 7.2; 26-5 at ECF p. 9 § 7.2. The clauses stated that "any dispute" will "be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes," which were hyperlinked. *Id*.

Coinbase periodically updates the UA and requires customers to view the updated UA before accessing their accounts. Dkt. No. 5 ¶ 61. When Coinbase revised the UA in 2022, all users were presented with the updated terms in a pop-up window, and were required to click on a button that says "Accept terms" before logging in. Dkt. No. 26-1 ¶ 15. Coinbase uses a software program called Admin to automatically track certain user activity, including account creation and acceptance of the UA. *Id*. ¶ 6. The named plaintiffs accepted the 2022 UA on February 4, 2022, and February 28, 2022. *Id*. ¶¶ 19-20.

The 2022 UA contains a California choice-of-law provision, a binding arbitration provision (Arbitration Agreement), and a class action waiver, and it again incorporates the rules of the American Arbitration Association (AAA). *See* Dkt. No. 26-6, § 9.5; *id*. App'x 5 §§ 1.4, 1.6. The Arbitration Agreement provides that "any dispute … arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site … including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court," with certain exceptions. *Id*. App'x 5 § 1.1. It provides that the FAA will govern. *Id*. § 1.4. It includes a delegation clause that reads, in pertinent part:

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or related to the Section

entitled "Waiver of Class and Other Non-Individualized Relief," including any claim that all or part of [that section] is unenforceable … shall be decided by a court of competent jurisdiction and not by an arbitrator; … and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided by a court of competent jurisdiction and not by an arbitrator.

## LEGAL STANDARDS

The Court has detailed the standards governing a motion to compel arbitration under the FAA in several prior orders, which are incorporated here. *See Keller v. Chegg, Inc.*, No. 22-CV-06986-JD, 2023 WL 5279649, at *1 (N.D. Cal. Aug. 15, 2023); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019). In pertinent part, the Court's role under Section 4 of the FAA "'is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2023 WL 187498, at *1 (N.D. Cal. Jan. 13, 2023) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). "If the party seeking to compel arbitration establishes both factors," the Court "'must order the parties to proceed to arbitration only in accordance with the terms of their agreement.'" *Id.* (quoting *Lifescan*, 363 F.3d at 1012). The validity and scope of an agreement to arbitrate are determined by the Court unless the parties clearly provide that those questions will be determined by the arbitrator. *Id.* at *2 (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)).

## DISCUSSION

The statements about the UAs in the complaint and the undisputed evidence in the record with respect to the content and acceptance of the arbitration clauses in 2017 and 2022 make relatively short work of the motion to compel arbitration. There is no genuine dispute with respect to the formation of an agreement to arbitrate. *See generally Norcia v. Samsung Telecomms. America, LLC*, No. 14-cv-00582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017). Coinbase has carried its burden of demonstrating that it provided "reasonably conspicuous notice of" the UA, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023), and that plaintiffs "[took] some action, such as clicking a button or checking a box, that unambiguously manifest[ed] [their] assent to those terms," *In re Facebook Biometric*

3

*Info. Priv. Litig..*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014)). Plaintiffs acknowledged as much in the complaint, and Coinbase crossed the finish line by providing undisputed evidence that plaintiffs clicked "Accept terms" on a pop-up window containing the 2022 UA. *See* Dkt. Nos. 26-2 & 26-3 (user records); Dkt. No. 26-8 (pop-up). To put a finer point on this, Woody agrees that he was required to accept "a new terms of service" "at least once," which is what Coinbase's records show. Dkt. No. 28-1 ¶ 10. Hrehorovich suggests that he had some technical difficulties on the Coinbase website, and speculates that Coinbase's records may be inaccurate, but he does not meaningfully contest that he saw and accepted the UA in the course of opening his account and did not put any substance into his speculations. It bears mention that all Coinbase users were required to accept the UA in February 2022, *see* Dkt. Nos. 26-1 ¶ 15, and plaintiffs used the platform after that time, *id*. ¶¶ 22-23. *See also* Dkt. No. 30-1 ¶¶ 9-10.

There is also no question that the 2017 and 2022 UAs are quintessential clickwrap agreements "in which a website presents users with specific contractual terms" and "users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein.*, 60 F.4th at 513. Such agreements are binding because the user must "affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (citing cases). *See also Oberstein*, 60 F.4th at 513. "This is especially true when," as in the case of the 2022 UA, "the agreement is presented in 'an online pop-up window that contained the entire agreement within a scrollable textbox.'" *Keller*, 2023 WL 5279649, at *3 (quoting *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931 (2022)). *See* Dkt. No. 26-8.

Consequently, the named plaintiffs' objections about arbitrability, such as scope and unconscionability, have been delegated to the arbitrator. The 2017 and 2022 UAs each expressly incorporate the rules of the AAA. "[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," including for consumers and other purportedly "unsophisticated" parties. *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)); *see also Cruz v. Cambridge Real Est. Servs., Inc.*, No. 22-

4

CV-06075-JD, 2023 WL 3134198, at *2 (N.D. Cal. Apr. 27, 2023).  The 2022 UA also contains a delegation clause providing that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including … the enforceability, revocability, scope, or validity of the Arbitration Agreement…."  Dkt. No. 26-6, App'x 5 § 1.6.  "This is just the kind of language which establishes that 'the parties clearly and unmistakably agreed to arbitrate the question of arbitrability.'"  *Cornet*, 2023 WL 187498, at *2 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).  *See also Flores v. Coinbase, Inc.*, No. CV 22-8274-MWF-KS, 2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023).

      Plaintiffs say in a section heading in their opposition brief that the delegation clause is "procedurally and substantively unconscionable," Dkt. No. 28 at 9, but they made no effort to meaningfully develop that point.  They object to provisions such as the requirement in section 7.2 of the 2022 UA that customers first submit complaints to the Customer Support team (*id*. at 10); the requirement in Appendix 5, section 1.8 that certain arbitration demands be consolidated into Batch Arbitration (*id*. at 11); and the provisions in Appendix 5, sections 1.4 and 1.7 that relate to discovery and fees (*id*. at 12 fn. 5, 13).  None of these provisions are part of, or related to, the delegation clause at Appendix 5, section 1.6.  *See* Dkt. No. 30 at 7-8.  Because all of plaintiffs' unconscionability arguments are addressed to the Arbitration Agreement as a whole, and not the delegation clause specifically, the arbitrator will resolve them.  *McLellan*, 2017 WL 4551484, at *1.

      A carve-out in the 2022 arbitration clause of certain topics for the Court to decide, *see* Dkt. No. 26-6, App'x 5 § 1.6, does not lead to a different conclusion.  One carve-out states that "[d]isputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator."  *Id*.  This is relevant here only in that plaintiffs say they are not subject to the 2022 UA and that the 2017 agreements did not delegate questions of arbitrability to the arbitrator.  *See* Dkt. No. 28 at 6-7.  The problem for plaintiffs is that, as discussed, the incorporation of the AAA rules in the 2017 clauses are a delegation clause.  There is no need to rely on the 2022 for delegation purposes, and so no need to decide which agreement applies for present purposes.

5

Plaintiffs' suggestion that their UCL claim cannot be compelled to arbitration because they seek "public injunctive relief," Dkt. No. 28 at 14, is misdirected. Although it is true that an arbitration agreement may not bar an award of public injunctive relief, *see Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 827 (9th Cir. 2019); *McBurnie v. Acceptance Now, LLC*, 643 F. Supp. 3d 1041, 1047 (N.D. Cal. 2022), plaintiffs do not seek public injunctive relief. They seek damages and equitable relief on behalf of a putative class of Coinbase customers, as well as an injunction barring "the unlawful practices alleged" in the complaint, which would also affect only Coinbase customers. Dkt. No. 5 at 24-25. Because these requests "stand to benefit only" Coinbase customers "'similarly situated to the plaintiff[s],'" and "not the general public as a more diffuse whole," they are not requests for public injunctive relief. *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021) (quoting *McGill*, 2 Cal. 5th at 955). Consequently, any purported waiver in the UA of the right to pursue public injunctive relief has no bearing on the present dispute about arbitration. *See Cornet*, 2023 WL 187498, at *3.

Plaintiffs mention in closing that they "may be third-party beneficiaries" to an agreement between Coinbase and Flare that is said to potentially override the UA and its Arbitration Agreement. Dkt. No. 28 at 15. Coinbase filed the agreement with Flare, Dkt. No. 30-2, and it says nothing about arbitration or any forum for resolving disputes. Plaintiffs did not object to this or otherwise respond. In any event, any perceived conflict between the arbitration agreement and another agreement would be a question of arbitrability that the arbitrator must decide.

## CONCLUSION

Plaintiffs' claims are ordered to arbitration on an individual basis, and the case is dismissed without prejudice. *See Forrest v. Spizzirri*, 62 F.4th 1201, 1205 (9th Cir. 2023).

**IT IS SO ORDERED.**

Dated: October 17, 2023

JAMES DONATO
United States District Judge